UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS G. JAMES,

                 Plaintiff,

vs.

AMERICAN GENERAL ASSURANCE
COMPANY, et al.,

                 Defendants.

_____/

Civil Action No.
10-CV-12083

HON. MARK A. GOLDSMITH

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION and GRANTING PLAINTIFF LEAVE TO FILE AMENDED COMPLAINT

### I. INTRODUCTION

This case is filed pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Plaintiff Dennis G. James, a former employee of Northwest Airlines, Inc. ("NWA"), suffered injuries as a result of a car accident in 2002. Defendants Northwest Airlines Pension Plan for Contract Employees ("Pension Plan") and Northwest Airlines Long Term Disability Plan ("LTD Plan") denied Plaintiff's separate claims for disability-pension benefits and long-term disability benefits, respectively. Plaintiff challenges both denials, asserting that they were improper.[1]

---

[1] The Court collectively refers to Defendants Pension Plan and LTD Plan as the "Plan Defendants."

Now before the Court is the Plan Defendants' motion to dismiss for lack of subject matter jurisdiction.[2]  The Plan Defendants argue that the case must be dismissed in its entirety for lack of subject matter jurisdiction pursuant to the mandatory arbitration provision of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.  The matter is fully briefed and oral argument was heard on April 28, 2011.  After oral argument, the Court requested, and the parties submitted, two rounds of supplemental briefing relating to two discrete issues.  For the reasons that follow, the Court concludes that it lacks jurisdiction over this matter.  Thus, the motion to dismiss of the Plan Defendants will be granted; Plaintiff will be granted leave to file an amended complaint within 14 days of today's date, if he so chooses.

## II. BACKGROUND[3]

Plaintiff is a former NWA reservation sales agent.  Def. Ex. C, NWDP_JAMES 0225.  In December 2002, Plaintiff suffered physical injuries, including a torn right rotator cuff, resulting from a car accident.  Id.  Plaintiff briefly returned to work after the accident but on March 26, 2000, ceased working and never returned.[4]  On December 19, 2005, Plaintiff was awarded social security disability benefits on the finding that he was unable to engage in any substantial gainful employment.  Def. Ex. C, NWDP_JAMES 0225-0226.

---

[2] Also pending in this matter are cross-motions for judgment; however, because the Plan Defendants' motion to dismiss presents a threshold question – whether the Court has jurisdiction over the case – the Court resolves the motion to dismiss first.

[3] The pertinent background facts are gleaned from the evidence attached to the parties' motion papers, and are not in dispute.

[4] The next day, on March 27, 2003, Plaintiff underwent surgery to repair his rotator cuff. Approximately two weeks later, Plaintiff slipped and fell, injuring his shoulder.  On April 29, 2003, Plaintiff underwent another surgery to repair his shoulder.  Over the next few years, Plaintiff continued to experience pain, and underwent further shoulder surgeries.

Plaintiff is a participant of, and filed claims under, two separate ERISA-governed employee benefit plans: the Pension Plan and the LTD Plan. Plaintiff's claims under both plans were denied; his claim for disability-pension benefits was denied by the Pension Plan, and his claim for long-term disability benefits was denied by the LTD Plan and its administrator, Defendant American General Assurance Company ("AGA").[5]  In this lawsuit, Plaintiff challenges both denials.

The Pension Plan is a tax-qualified defined benefit pension plan for the benefit of eligible union-represented employees of NWA. Def. Ex. A, NWPPCE 0006. The plan provides eligible employees with disability-pension benefits. Employees are eligible to participate in the Pension Plan only if their collective bargaining agreement ("CBA") authorizes it. Id. at 0019. There is no dispute that Plaintiff is eligible to participate in the Pension Plan because it has been adopted by the CBA between NWA and Plaintiff's union, the International Association of Machinists and Aerospace Workers ("IAM"). Def. Ex. B, IAM_CBA 0266.

Under the Pension Plan, employees are eligible for disability-pension benefits if the employee suffers a "total and permanent disability which renders the Participant incapable of any employment with the Employer." Def. Ex. A, NWPPCE 0011. In order to receive disability-pension benefits, the claimant must be deemed "disabled" as of the employee's "disability retirement date," which is the date on which the employee exhausts all vacation and sick leave benefits, and any other incapacity benefits. Id. at 0012.

---

[5] To be clear, the Pension Plan had nothing to do with the decision of the LTD Plan and AGA to deny Plaintiff's claim for long-term disability benefits under the LTD Plan. Likewise, the LTD Plan and AGA had nothing to do with the Pension Plan's decision to deny Plaintiff's claim for disability pension benefits under the Pension Plan. In this regard, Plaintiff's two claims are entirely independent of one another.

The process governing the adjudication of disability-pension benefit claims is outlined in the Pension Plan and the CBA.  At the initial step, the Pension Plan determines whether the claimant qualifies for benefits.  Id.  If the claimant disagrees with the Plan's determination, then the matter proceeds to step two.  At step two, the matter is referred to a mutually-agreeable independent physician, who conducts an independent medical examination and renders a binding opinion as to whether the claimant is disabled under the terms of the Pension Plan.  Id.  If the claimant disagrees with the independent physician's disability determination, the claimant may pursue a step three appeal through the system board of adjustment ("SBA").  Def. Ex. B, IAM_CBA 187-189.

Plaintiff submitted his claim under the Pension Plan on or about July 13, 2006.  The claim was denied at step one on a finding that Plaintiff was not totally and permanently disabled as of March 26, 2003, his purported disability retirement date.  Def. Ex. C, NWDP_JAMES 0222-0227.  Plaintiff appealed the initial denial and, pursuant to the terms of the Pension Plan, selected Dr. Mitchell Z. Pollak, M.D. as an independent physician.  Def. Ex. D, NWDP_JAMES 0277.

Dr. Pollak reviewed Plaintiff's medical records and performed a physical examination in order to determine whether Plaintiff was totally and permanently disabled as of March 26, 2003.  Dr. Pollak concluded that although Plaintiff was totally disabled as of March 26, 2003, he was not also permanently disabled on that date.  According to Dr. Pollak, Plaintiff was not permanently disabled until later – sometime between his first shoulder surgery on March 27, 2003 and his second shoulder surgery on April 29, 2003.  Plaintiff was informed of the denial of his claim at step two by letters dated September 6 and 18, 2007.  Id. at 0277-0288.

On November 26, 2007, Plaintiff wrote to the Pension Plan challenging the disability retirement date (March 26, 2003) used to determine whether he was entitled to disability-pension benefits. Plaintiff argued that a later date applied because he had not yet exhausted all his unpaid sick time as of March 26, 2003. The Pension Plan agreed with Plaintiff and determined that his correct disability retirement date was one day later, March 27, 2003. Accordingly, the Pension Plan sustained Plaintiff's challenge, re-opened his claims file, and instructed Dr. Pollak to re-evaluate his opinion in light of the one-day change in the disability retirement date. Def. Ex. F, NWDP_JAMES 0147-0150. Dr. Pollak re-evaluated Plaintiff's claim, but ultimately reached the same conclusion as before. Def. Ex. G, NWDP_JAMES 0116-0119; Def. Ex. H, NWDP_JAMES 0120.[6]

Plaintiff was notified of Dr. Pollak's decision by letter dated April 8, 2008. Def. Ex. I, NWDP_JAMES 0114. On April 14, 2008, Plaintiff spoke to Christine Wolff, the Pension Plan's administration manager, inquiring how to proceed. NWDP_JAMES 0522 (docket entry 22-5). He was advised by Wolff "to file a request for system board review through his union." Id.

The next month, on June 10, 2008, Plaintiff wrote a letter to Jerry Cross, an IAM representative, advising that the Pension Plan had denied his claim for disability-pension benefits. The letter reflects that Plaintiff had previously spoken to union representatives about the denial of his claim for disability-pension benefits:

> After speaking to you [referring to union representative Jerry Cross] and [union representative] Bill Holloway, you told me that System Board of

---

[6] Dr. Pollak reasoned that as of March 27, 2003, the date of Plaintiff's first shoulder surgery, he would have anticipated that Plaintiff would have fully recovered following the surgery and returned to work. As it ultimately turned out, Plaintiff later re-injured his shoulder when he fell the next month, which led to additional surgeries that proved unsuccessful. Consequently, Dr. Pollak opined that Plaintiff was not totally <u>and</u> permanently disabled until "the first surgery [had] failed and he started down the road to what turned out to be multiple surgical procedures, with ultimate failure to correct his problem." Def. Ex. H, NWDP_JAMES 0120.

> Review is not an option for me and is not used in individual cases such as
> mine.

Supp. Br., August 1, 2011, Ex. A.  Plaintiff concluded the letter by requesting that the union

verify in writing that SBA review is not an option for him.

On July 2, 2008, Plaintiff wrote to Steve Gordon, IAM's General Chairman, stating that

he had requested that IAM pursue his claim before the SBA but that he had yet to receive a

response from the union.  Id. at Ex. 2.  In that same letter, Plaintiff clearly requested union

representation before the SBA regarding his claim for disability-pension benefits:

> At this time, I would request that the Union file a grievance on my behalf
> against Northwest Airlines regarding my claim for Disability Pension
> Benfits [sic].
>
> If a grievance is not filed within the next 20 days, I will presume no
> further action will be taken by the union, and I will proceed on my own
> with other appellate remedies as I and my legal counsel deem appropriate.

Id.  No response from the union is in the record.  Plaintiff did not proceed on his own before the

SBA; instead, he filed the present lawsuit on May 24, 2010.[7]

As noted above, Plaintiff was also a participant of the LTD Plan by virtue of his union

membership.  During the relevant time period, long-term disability benefits were available under

a group disability policy issued and administered by Defendant AGA.  Def. Ex. J, AG 00129.

Under the terms of the LTD Plan, eligible employees who meet the definition of "disabled" and

who timely submit their claims are entitled to long-term disability benefits.  Regarding the

timeliness requirement, claimants must submit their claims no later than one year and 90 days

---

[7] Although the correspondence between Plaintiff and union officials is not contained in the
administrative record, the Court nonetheless considers it because it is necessary to determine
whether this Court has subject matter jurisdiction pursuant to the RLA over Plaintiff's claim for
pension-disability benefits.  See Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 481 (6th
Cir. 2009) ("[w]hen Congress establishes a jurisdictional prerequisite, a district court may admit
extrinsic evidence and resolve disputed facts to decide if the asserted claim satisfies the
jurisdictional prerequisite").

after the claimant's benefit waiting period ends.  Id. at 00126.  Moreover, the policy contains a provision stating that it "is governed by the laws of the state where it is delivered."  Def. Ex. C, AG 00016.

Plaintiff filed his claim for long-term disability benefits under the LTD Plan on or around February 27, 2006.  Def. Ex. L, AG 00087.  AGA denied the claim, however, on the basis that the claim was untimely pursuant to the requirement that claimants file their claims no later than one year and 90 days after the claimant's benefit waiting period ends.  Def. Ex. K, AG 00067-69. Plaintiff appealed the denial, arguing that his claim was not submitted in accordance with the one year, 90-day rule because he was told by AGA representatives that submission of a claim while he was receiving other benefits (i.e., no-fault insurance benefits) would have been "fruitless" since any long-term disability benefits to which Plaintiff was entitled would be offset by the receipt of other benefits.  Def. Ex. L, AG 00087-89.  By letter dated July 24, 2006, AGA upheld its benefits denial, explaining that the fact that an offset may have applied did not excuse Plaintiff from his responsibility to file a timely claim.  Id.  According to AGA, Plaintiff should have timely filed his claim so that liability could be determined, at which time any offsets would be applied.  Id.  Plaintiff again appealed the denial, to no avail.  Def. Ex. M, AG 00091-92.

Plaintiff never requested that his union represent him before the SBA in connection with his claim for long-term disability benefits under the LTD Plan.  Instead, he filed the present lawsuit.

In this lawsuit, Plaintiff challenges both the denial of pension-disability benefits under the Pension Plan and the denial of long-term disability benefits under the LTD Plan.  The Complaint contains five counts.  The first three counts specifically relate to the Pension Plan,[8]

---

[8] In the first three counts, Plaintiff alleges that he was improperly denied disability-pension benefits to which he is entitled under the Pension Plan.  Specifically, in count one, Plaintiff seeks

and the last count relates to the LTD Plan[9]; the fourth count, which is muddled and confusing, appears to relate to both plans, although the Court cannot be certain due to imprecise draftsmanship.

## III. ANALYSIS

### A. General Statutory Framework Under the RLA

The Plan Defendants argue that the RLA's mandatory arbitration provision divests the Court of subject matter jurisdiction over both Plaintiff's claim against the Pension Plan and his claim against the LTD Plan and AGA. Under the RLA, air carriers and unions are required to establish a SBA to resolve "disputes . . . growing out of . . . the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 184. Such disputes, which are called "minor disputes," "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 253 (1994).[10] This means that federal courts lack jurisdiction over actions involving minor

_____

relief pursuant to 29 U.S.C. § 1132(a)(1), alleging that he was denied benefits to which he is entitled under the Pension Plan. In count two, Plaintiff seeks equitable relief pursuant to 29 U.S.C. § 1132(a)(3). In count three, Plaintiff seeks a declaration that he is "disabled," as that word is defined in the Pension Plan, and therefore entitled to disability-pension benefits.

[9] In the last count, Plaintiff alleges that he was improperly denied long-term disability benefits to which he is entitled under the LTD Plan. Specifically, Plaintiff alleges that, absent a showing of actual prejudice, his claim should have been decided on the medical merits, and not denied solely based on the purported fact that it was untimely.

[10] Phrased differently, minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Trainmen v. Chicago R. & Ind. R.R. Co., 353 U.S. 30, 33 (1957). By contrast, "major disputes" are controversies "over the formation of collective agreements or efforts to secure them," Elgin, Joliet & E. Ry. Co. v. Burley, 325 U.S. 711, 723(1945). The Sixth Circuit has operationalized this distinction by reference to whether the dispute can be resolved soley by interpreting the plan's language; if it can, the dispute is deemed minor. See Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc., 464 F.3d 606, 613-614 (6th Cir. 2006).

disputes.  See Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co., 373 U.S. 33, 38 (1963) (the RLA provides a "mandatory, exclusive, and comprehensive system" for resolving minor disputes, which cannot be defeated by resorting to another forum); Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc., 464 F.3d 606, 610 (6th Cir. 2006) (adjustment boards have exclusive jurisdiction over minor disputes).  There is a presumption that disputes are minor and thus arbitrable, and doubts should be resolved in favor of arbitration.  United Transp. Union v. Cuyahoga Valley Ry. Co., 979 F.2d 431, 434 (6th Cir. 1992).

Notably, the RLA's mandatory arbitration requirement applies to pension disputes under ERISA.  See Bonin v. Am. Airlines, Inc., 621 F.2d 635, 638 (5th Cir. 1980) ("[d]espite [ERISA's] express provision allowing suits over the coverage and application of pension plans to be brought in federal court, [it] was not intended to, nor did it, preempt the mandatory arbitration provisions of the Railway Labor Act").  However, for the RLA's arbitration requirement to apply in the ERISA context, the pension plan must either be (1) itself a CBA, or (2) maintained pursuant to a CBA.  Jenisio v. Ozark Airlines, Inc. Ret. Plan for Agent & Clerical Emps, 187 F.3d 970, 973 (8th Cir. 1999).  See also Hawaiian Airlines, 512 U.S. at 256 (disputes "grounded in the CBA" are subject to arbitration under the RLA); Air Line Pilots Ass'n Int'l v. Delta Air Lines, Inc., 863 F.2d 87, 93 (D.C. Cir. 1988) (the RLA's arbitration requirement applies where pension plan "maintained pursuant to a [CBA]" (internal quotation marks omitted)).

To summarize: minor disputes related to employee benefit plans that are either a CBA or maintained pursuant to a CBA are subject to the exclusive jurisdiction of the SBA pursuant to the RLA's mandatory arbitration provision.  Thus, the Court has no jurisdiction over Plaintiff's claim that he was wrongfully denied disability-pension benefits and long-term disability benefits

under the Pension Plan and LTD Plan, respectively, if the claims qualify as minor disputes and the plans are either CBAs or maintained pursuant to CBAs.

### B.  The Parties' Arguments

The Plan Defendants argue that Plaintiff's claims under both the Pension Plan and the LTD Plan constitute minor disputes.  Plaintiff disagrees, arguing that both constitute major disputes because the language of both plans is irrelevant to the resolution of the claim disputes.

The Plan Defendants also argue that both the Pension Plan and the LTD Plan are maintained pursuant to the CBA.  Plaintiff does not dispute this contention.

In addition, Plaintiff argues that even if his claims constitute minor disputes that would ordinarily be subject to the RLA's exclusive arbitration provision, federal court jurisdiction is nonetheless proper pursuant to certain limited exceptions, discussed below, that would allow a minor dispute to be heard in a judicial forum.

### C.  Discussion

The Court first addresses whether Plaintiff's claims constitute minor disputes or major disputes, followed by a discussion of whether Pension Plan and the LTD Plan are maintained pursuant to the CBA between NWA and IAM.  Ultimately concluding that Plaintiff's claims constitute minor disputes pertaining to plans that are maintained pursuant to the CBA, the Court then discusses the applicability of two exceptions to the RLA's exclusive jurisdiction provision. Finally, the Court addresses two additional arguments advanced by Plaintiff in support of his position that federal court jurisdiction is proper.

#### 1.  Plaintiff's Claims Constitute Minor Disputes

Plaintiff argues that his claims for disability-pension benefits and long-term disability benefits both constitute major disputes and not minor disputes.  The Sixth Circuit has held that

challenges to ERISA benefit denials are minor disputes if resolution of the dispute requires interpretation of plan language.  Stephens, 464 F.3d at 613-614.  See also Jenisio, 187 F.3d at 974 (standard ERISA claim challenging denial of disability benefits was minor dispute since it required interpretation of plan language).  However, when resolution of a dispute depends on something other than the plan language, the dispute is a major one.  See Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union, 396 U.S. 142, 145 n.7 (1969) (a major dispute "is one arising out of the formation or change of collective agreements covering rates of pay, rules, or working conditions").

### a.  The Pension Plan

In the present case, Plaintiff asserts that he is entitled to disability-pension benefits under the Pension Plan because, contrary to the Pension Plan's determination, he was "totally and permanently disabled," pursuant to the terms of the plan, as of March 27, 2003, his disability retirement date.  See, e.g., Compl. ¶ 9 ("A controversy . . . exists . . . as to whether Plaintiff is disabled under the terms of the Pension/Retirement Plan.").  Because Plaintiff's claims against the Pension Plan for disability-pension benefits necessarily require the Court to determine whether the Pension Plan correctly interpreted the term "disability," as defined in the plan documents, the dispute is a minor one.  See Stephens, 464 F.3d at 613-614 (minor disputes are those disputes that ask the court to interpret plan language to determine if there is conflict between such language and the result reached by the adjustment board).  Plaintiff does not seriously urge a contrary result.[11]

---

[11] Plaintiff briefly argues that the dispute is a major one because it hinges on the meaning of the word "permanent," a word that is not defined in the plan but used in the Plan's definition of the term "disability."  Because the word "permanent" in not defined in the plan, Plaintiff argues that the Court will not rely on the plan language in construing the term.  This argument is disingenuous.  As the Supreme Court has held, minor disputes are those involving the interpretation of plan language.  The Pension Plan defines the term "disability" using the word

**b.  The LTD Plan**

Plaintiff claims that he is entitled to long-term disability benefits under the LTD Plan, despite the fact that his claim was not timely filed under the terms of the plan, because no prejudice resulted from any delay in filing his claim.  See Compl. ¶ 25.  Relying on Coker v. Trans World Airlines, Inc., 165 F.3d 579 (7th Cir. 1999), Plaintiff contends that this claim presents a major dispute, and is therefore not subject to the exclusive jurisdiction of the SBA.

The plaintiff in Coker, an airline employee who participated in an ERISA-governed medical insurance plan, brought a common law promissory estoppel action under ERISA, alleging that the plan administrator falsely represented that he continued to be covered under the plan when, in fact, coverage had lapsed.  Id. at 581.  The Seventh Circuit affirmed the district court's determination that the case involved a major dispute, and not a minor one, because although the estoppel claim was tangentially related to the CBA inasmuch as it authorized the benefits claim, the dispute ultimately turned on factual questions that could not be answered by reference to the CBA, such as whether the airline had misrepresented material facts regarding coverage and whether the plaintiff detrimentally relied on such misrepresentations.  In other words, because resolution of the dispute did not require interpretation of – or even reference to – the CBA, the case did not present a minor dispute.  Id. at 584.

Although not discussed by the parties, the Court notes that the Sixth Circuit reached a similar conclusion in Stephens, another case involving an oral agreement.  The plaintiffs in Stephens, former airline pilots, brought a class action against the airline and its pension plan, alleging that the airline and pension plan violated ERISA when they – pursuant to a purported

---

"permanent."  Thus, regardless of whether Plaintiff characterizes the dispute as involving the interpretation of the word "disability" or the interpretation of the word "permanent," the Court is being asked to interpret the plan language, and the viability of Plaintiff's claim ultimately hinges on the Court's construction.  For this reason, the dispute is a minor one.

oral agreement in place between the union and the airline – delayed the payment of lump sum retirement benefits without paying interest on such payments during the delay.[12]   The pilots argued that the dispute was a major one because it did not involve the interpretation of the plan language, but rather involved the interpretation of the purported oral argument.   The airline argued the dispute was minor because the oral agreement was being used as further evidence on what construction to give to the written plan language.   Although noting that the case presented a "close question," the Sixth Circuit ultimately sided with the pilots, and held that the dispute was major because it did not involve the interpretation of the plan language, but rather only the interpretation of the oral agreement.   Stephens, 464 F.3d at 611-612.

Coker and Stephens stand for the proposition that, in determining whether a dispute is major or minor, the inquiry is whether the plan language must be consulted in order to resolve the dispute.   If the dispute cannot be resolved without reference to the plan language, the dispute is minor; otherwise, the dispute is major.

Plaintiff argues that he is entitled to long-term disability benefits under the LTD Plan – despite the fact that his claim was not timely filed under the terms of the plan – because no prejudice resulted from the delay in filing his claim.   In other words, Plaintiff does not dispute that his claim was untimely under the relevant provision of the LTD Plan; rather, he argues essentially that his tardiness should be excused in light of the purported fact that no prejudice resulted from the delay.   In order to succeed on this argument, Plaintiff would have to show that Minnesota law – and not Michigan law – applies, because Minnesota law purportedly requires an insured to show that the insurer suffered actual prejudice as a result of an insured's noncompliance with a notice requirement, see Farmers Ins. Exch. v. Hallaway, 564 F. Supp.2d

---

[12] The written collective bargaining agreement the parties did not shed light on whether interest would accrue during the delay.  The purported oral agreement, however, answered this question in favor of the airline.

1047, 1053 (D. Minn. 2008), while Michigan law does not require an analogous prejudice showing. In turn, the question of whether Michigan law or Minnesota law applies turns on how the Court interprets the following choice of law provision contained in the LTD Plan:

> **Jurisdiction**
> This policy is governed by the laws of the state where it is delivered.

Def. Ex. C, AG 00016. The LTD Plan argues that the policy was "delivered" in Michigan; Plaintiff argues that it was "delivered" in Minnesota. Thus, the dispute here directly involves the interpretation of language contained in the plan. The dispute does not involve, for example, factual questions (as in <u>Coker</u>) or the interpretation of an agreement independent of the plan (as in <u>Stephens</u>). Because the dispute would require the Court to interpret plan language, it is minor.

### 2. Both the Pension Plan and the LTD Are Maintained Pursuant to the CBA

As explained, for the RLA to preclude the Court's exercise of jurisdiction over Plaintiff's claims, the two plans must either themselves be CBAs, or they must be maintained pursuant to a CBA. The Plan Defendants argue that the plans at issue here are maintained pursuant to the CBA. Plaintiff does not dispute this. After review, the Court agrees with the Plan Defendants that both plans are maintained pursuant to the CBA. The reasons underlying this conclusion are briefly set forth in the margin.[13]

---

[13] A pension plan is maintained pursuant to a CBA when the plan is incorporated by reference in the CBA. <u>Jenisio</u>, 187 F.3d at 973. Mere mentioning of the plan in a CBA does not satisfy the incorporation by reference requirement; instead, the question turns on whether any references to the plan in the CBA effectively incorporate the plan. <u>Id</u>. In <u>Jenisio</u>, for example, the Eighth Circuit determined that the pension plan at issue in that case was incorporated by reference in the CBA, and therefore maintained pursuant to the CBA, because: (1) the CBA set forth material amendments to, and elements of, the pension plan, (2) the pension plan referenced the CBA, and (3) the language of the CBA indicated that the employer and the union "bargained for the amendments to the Plan, if not for the Plan in its entirety." <u>Id</u>. at 973-974. <u>See also</u> <u>Hedman v. Northwest Airlines, Inc.</u>, No. 07-1847, 2008 WL 1808257, at *2 (D. Minn. Apr. 21, 2008) (finding that the pension plan at issue in that case was incorporated by reference into the CBA based on the same factors set forth in <u>Jenisio</u>).

14

Because Plaintiff's claims under the Pension Plan and LTD Plan are minor disputes related to employee benefit plans that are maintained pursuant to a CBA, his claims are subject to the exclusive jurisdiction of the SBA under the RLA's mandatory arbitration provision.

### 3. Exceptions to the RLA's Exclusive Jurisdiction Provision

As the Third Circuit has noted, "[o]ne important policy of the RLA . . . is to afford employees means for redress." Childs v. Pa. Fed'n Bhd. of Maint. Way Emps., 831 F.2d 429, 437 (3d Cir. 1987). See also Pyles v. United Air Lines, Inc., 79 F.3d 1046 1052 (11th Cir. 1996) ("While the RLA expresses a clear preference for arbitration of minor disputes, it is equally clear that it reflects a strong congressional interest in seeing that employees are not left remediless"). Thus, "courts have formulated exceptions to the jurisdictional scheme of the RLA where it

---

The Pension Plan is maintained pursuant to the CBA because, first, the CBA expressly adopts the Pension Plan, along with numerous amendments thereto. Def. Ex. B, IAM_CBA 0266. Second, the Pension Plan references the CBA. The Pension Plan states that NWA employees become a "participant" on the first date the employee is employed in "Recognized Employment," and "Recognized Employment" is defined as "all services performed for the Employer by an individual who is in a unit of employees whose terms and conditions of employment are subject to a collective bargaining agreement . . . which collective bargaining agreement provides for the inclusion of that individual in this Plan." Def. Ex. A, NWPPCE 0019. This reference to the CBA indicates that eligibility for participation in the Pension Plan is tied to IAM union membership. Moreover, the Pension Plan references the CBA a second time, stating that "[a]ny claim for benefits not resolved in accordance with the above procedures shall be subject to the System Board of Adjustment processes of the collective bargaining agreement." Def. Ex. A, NWPPCE 0045. Given the interconnectedness between the Pension Plan and the CBA, the former is maintained pursuant to the latter in accordance with Jenisio and Hedman.

The same is true of the LTD Plan. In Pearson v. Northwest Airlines, Inc., 659 F. Supp.2d 1084, 1092 (C.D. Cal. 2009), the court determined that the very LTD Plan at issue here is maintained pursuant to the very CBA at issue here, undercutting any argument by Plaintiff that the LTD Plan is not maintained pursuant to the CBA between NWA and IAM. In Pearson, a NWA employee who was a member of IAM, the union at issue in the present case, was denied long-term disability benefits under the same LTD Plan as at issue in the present case. The plaintiff in Pearson argued that the LTD Plan was not maintained pursuant to the CBA. Id. at 1091. In rejecting the argument, the Pearson court carefully analyzed the language of the LTD Plan and the CBA, and determined that the LTD Plan was incorporated by reference into the CBA and therefore maintained pursuant to the CBA. Id. at 1092. The Court adopts the sound analysis and reasoning of the Pearson court and finds it equally applicable here.

appears that without such access to the federal courts the employee's right to redress would be in jeopardy." Id. Federal courts have jurisdiction over minor disputes when: (1) the employer repudiates the private grievance machinery; (2) resort to administrative remedies would be futile; (3) the employer is joined in a duty of fair representation claim against the union; or (4) the union breaches its duty of fair representation, causing the employee to lose the right to present his or her grievance. Miklavic v. USAir Inc., 21 F.3d 551, 555 (3d Cir. 1994). These exceptions are construed "very narrowly." Childs, 831 F.2d at 438.

Plaintiff argues that the second and fourth exceptions apply in this case. With regard to the second exception – futility – it is well established that "[a] proceeding in arbitration is futile only when, through bias, prejudice or predisposition on the part of the arbitration board, there would be no point in submitting the claim to arbitration." Miklavic, 21 F.3d at 555 (emphasis in original). See also Vera v. Saks & Co., 424 F. Supp.2d 694, 707 (S.D.N.Y. 2006) ("the futility exception has been largely limited to situations where the operation of bias or prejudice renders any attempts to resort to contractual remedies useless"); Martin v. Warrington, No. 01-1178, 2002 WL 341000, at *2 (E.D. Pa. Mar. 4, 2002) ("[t]he unresponsiveness of the union and the employer does not render the administrative remedy futile"). In other words, the arbitrator must "be hostile to [the grievant's] claims." Miklavic, 21 F.3d at 556. Moreover, to invoke the futility exception, there must usually be collusion between the union and the employer. See ABA Section of Labor & Employment Law, The Railway Labor Act 308 (2d ed. 2005 & Supp. 2010) ("The futility exception . . . has been invoked infrequently in circumstances not involving collusion between the union and the employer; some cases appear to use the terms 'futility' and 'collusion' interchangeably"). The present case contains no allegations pertaining to any sort of

animus on the part of the SBA, nor does it contain allegations of collusion between NWA and IAM.  Thus, Plaintiff's reliance on the futility exception is misplaced.

This leaves only the fourth exception; however, the Court ultimately concludes that Plaintiff has not pled facts that could plausibly support its application.   Under the fourth exception, compliance with the RLA's mandatory arbitration procedure is excused when the employee shows that the union has breached its duty of fair representation; that is, the employee must show that: (1) he or she relied on the union to process his or her grievance; (2) such reliance was reasonable; and (3) such reliance caused the employee's failure to personally present his or her claim to the SBA.  Kaschak, 707 F.2d at 903.  See also Schum v. S. Buffalo Ry. Co., 496 F.2d 328 (2d Cir. 1974) (judicial intervention appropriate where grievant relies on union to pursue grievance, only to find out later that the union broke that promise).

The plaintiff in Kaschak sued his employer, the railroad, alleging that he was wrongfully terminated and thus wrongfully denied certain employment benefits.  The plaintiff brought his grievance to his union's attention in a timely manner, but the union – through no fault of the plaintiff – failed to commence appropriate grievance procedures in accordance with the timing requirements set forth in the applicable CBA.  As a result of his reasonable reliance on the union to pursue his claim on his behalf, the plaintiff lost his right to have his grievance processed through the SBA.  The Sixth Circuit concluded that federal court jurisdiction was proper under the circumstances because the plaintiff established that his failure personally to proceed before the SBA was justifiable; the union breached its duty of fair representation by not properly processing the grievance despite its promise to do so, and it was reasonable for the plaintiff to rely on his union to pursue the claim.  The court wrote:

> Where the employee's failure to personally resort to the [SBA] arises
> solely out of reliance on the union's expertise and is a function of his or

> her own lack of the same, failure to afford the employee a judicial
> remedy is tantamount to a denial of the right to be a party to a legally
> enforceable collective bargaining agreement.  We cannot countenance
> such a result.

Kaschak, 707 F.2d at 910 (emphasis in original).  In so holding, the court emphasized – as have

several subsequent courts in their respective discussions of the Kaschak exception – that the

exception is "narrow," and the burden on the plaintiff in demonstrating its applicability is

"extreme":

> We must at this point emphasize the narrow scope of our decision.  The rule
> requiring resort to the [SBA] continues, one still may not forum shop
> between the [SBA] and the courts. . . . The burden on the plaintiff remains
> extreme.

Id. at 913 (footnote omitted).  See also Minehart v. Louisville & Nashville R. Co., 731 F.2d 342,

345 (6th Cir. 1984) (reiterating that the Kaschak exception is "narrow"); Emswiler v. CSX

Transp., Inc.,  No. 09-1004, 2011 WL 2135053, at *5 (S.D. Ohio Apr. 27, 2011) (same); Evans

v. Northwest Airlines, Inc., No. 92-750, 1993 WL 23589, at *2 n.4 (D. Minn. Jan. 29, 1993)

("before the employee may invoke the jurisdiction of the federal district court, the employee

bears a heavy burden of showing that the union's breach precluded the employee's recovery and

that the employee's reliance upon the union was reasonable"); Lang v. Consol. Rail Corp., 579 F.

Supp. 705, 707 (E.D. Mich. 1984) (characterizing Kaschak's requirements as "stiff").

Thus, the Kaschak exception is applicable only when the union falsely assures the

plaintiff by promising to file a grievance on his or her behalf – and then, unbeknownst to the

plaintiff until it is too late – fails to do so.  The present case does not fit within those parameters,

as IAM never suggested that it would pursue Plaintiff's claim of his behalf.  Plaintiff

acknowledges this distinction in his brief, but argues that the exception is applicable anyway:

> In <u>Kaschak</u>, the union agreed to but failed to pursue the claim. Here, the Union affirmatively reported to Plaintiff he could not submit his claim to the SBA. There is no relevant distinction in the two cases.

Supp. Br. at 3 n.4. The Court disagrees with Plaintiff that the distinction is not relevant. The distinction lies in the fact that the plaintiff in <u>Kaschak</u> lost the right to pursue his grievance <u>solely</u> because the union breached its duty of representation by suggesting that it would pursue the grievance, thereby inducing the plaintiff's reliance, and then repudiating its promise. Here, on the other hand, Plaintiff did not rely on IAM to take any action on his behalf and, perhaps for that reason, Plaintiff has not asserted a claim against the union for breach of its duty of fair representation. Because no claim has been advanced against the union in this case, and because there is no allegation that IAM wrongfully refused to process Plaintiff's grievance, the <u>Kaschak</u> exception does not apply. <u>See</u> <u>Kaschak</u>, 707 F.2d at 913 (for the <u>Kaschak</u> exception to apply, the plaintiff "must show that the Union <u>breached its duty of representation by not processing his grievance</u> and that it was reasonable for him to rely on the fact that they would not breach that duty" (emphasis added)).

The parties dispute whether Plaintiff could have pursued his claim without assistance from the union or his employer in accordance with the terms of the CBA. Plaintiff argues that the CBA precluded him from proceeding before the SBA on his own behalf, without union or employer backing. The Plan Defendants, on the other hand, argue that the CBA does not impose such a restriction. The Court need not resolve this dispute because, either way, the <u>Kaschak</u> exception does not apply on the facts of this case, as currently pled. Regardless of whether the CBA prohibits a grievant from proceeding on his or her own behalf before the SBA, Plaintiff has not alleged that IAM breached its duty of fair representation when it failed to handle his grievance. The law is clear that a union's decision not to pursue a grievance, by itself, does not

establish a breach of duty.  See Driver v. United States Postal Serv., Inc., 328 F.3d 863, 869 (6th

Cir. 2003) ("[t]he duty of fair representation does not require that a union fully pursue every

grievance filed").  The Kaschak exception is inapplicable.

### 4. Plaintiff's Other Arguments

Plaintiff asserts two other arguments in support of his position that the RLA's mandatory

arbitration provision does not apply to the two benefit denial challenges raised in this lawsuit.

First, Plaintiff argues that the case should not be dismissed because dismissal would not further

the purpose of the RLA, which is to "avoid any interruption to commerce or to the operation of

any carrier engaged therein."  45 U.S.C. § 151a.  According to Plaintiff, "[i]t would be highly

unlikely that any dispute as to the outcome of these disability claims by Plaintiff would cripple

flight operations of Northwest, now Delta Airlines."  Pl. Resp. at 1.  The Court rejects this

argument.  As the Sixth Circuit has noted, in enacting the RLA, "Congress recognized the

potential for the disruption of transportation, and hence, of commerce, where carriers and their

employees are unable to settle grievances."  Kaschak, 707 F.2d at 907.  Thus, Congress has

concluded that disputes like the one here do have the potential to disrupt commerce.  In any

event, avoiding interruption to commerce is but one of several purposes of the RLA.  Another

purpose is to "provide for the prompt and orderly settlement of all disputes concerning rates of

pay, rules, or working conditions," 45 U.S.C. § 151a, a purpose that is furthered here.  Thus,

Plaintiff's argument that dismissal of the case would be inconsistent with the purpose of the RLA

is unpersuasive.

Second, Plaintiff argues that his claims for benefits under the Pension Plan and LTD Plan

are not precluded by the RLA because the Pension Plan and the LTD Plan are not parties to the

CBA between NWA and IAM.  This same argument was considered and rejected by the Pearson

court, which held that whether the pension plan at issue in that case was a party to the CBA is "irrelevant." 659 F. Supp.2d at 1088-1089.  The law is settled that the RLA divests courts of jurisdiction over minor disputes relating to employee benefit denials if the employee benefit plan is either itself a CBA or maintained pursuant to a CBA.  Jenisio, 187 F.3d at 973.  Whether the plan is a party to the CBA or not is not part of the analysis.  See id. at 973-974 (court divested of jurisdiction over minor dispute relating to ERISA benefits denial despite the fact that the plan itself was not party to the CBA between the union and the airline); Stephens, 464 F.3d at 613-614 (same).

## IV. CONCLUSION

The two benefit-denial challenges asserted in the present case constitute minor disputes under employee benefit plans that are maintained pursuant to the CBA between IAM and NWA. Accordingly, the RLA's mandatory arbitration provision divests the Court of subject matter jurisdiction over this case.  Moreover, Plaintiff has not alleged facts that could plausibly support application of an exception to RLA's mandatory arbitration provision.  Accordingly, the Plan Defendants' motion to dismiss for lack of subject matter jurisdiction (Dkt. 33) is granted without prejudice to Plaintiff's ability to file an amended complaint within 14 days of today's date; if no amended complaint is filed, this dismissal will be deemed with prejudice.  All other pending motions in this case are denied as moot.

SO ORDERED.

Dated:  September 8, 2011                               s/Mark A. Goldsmith
                                                        MARK A. GOLDSMITH
                                                        United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 8, 2011.

s/Deborah J. Goltz
DEBORAH J. GOLTZ
Case Manager
